Good morning, Your Honors. Georgia Ainsworth for the Appellant's Dr. Ryan Haygood and Haygood Dental Care. May it please the Court. Appellants respectfully urge this Honorable Court to reverse the District Court's award of $110,261.16 in prevailing defendant's attorney's fees to the Ogden Appellees under 42 U.S.C. Section 1988 and the Louisiana Unfair Trade Practices Act. Love that. Appellants submit that the District Court abused its discretion to award the appellee's attorney's fees as, one, the District Court committed clear error when it concluded that, because the Section 1983 claims were dismissed as time-barred, they were therefore sufficiently frivolous to merit an award of the defendant's attorney's fees under Section 1988. Two, the District Court committed clear error when it held that, because the Ogden Appellees were not dentists, that appellant's LEPTA claims were groundless and brought in bad faith or with the intent to harass. And three, the District Court abused its discretion when it awarded over $110,000 in attorney's fees to the Ogden Appellees with no reduction for time spent on matters completely unrelated to the appellee's defense of the 1983 and LEPTA claims. Appellants' claims against the Ogden Appellees are set forth in detailed factual allegations in the complaint and amended complaint, are based in law, and are supported by evidence, and therefore, they're not frivolous. The fact that the Board of Dentistry violated Dr. Haygood's right to due process and arbitrarily and capriciously deprived him of his dental license is not in dispute. The Louisiana Fourth Circuit held as much, and in December 2012, the Louisiana Supreme Court declined writs. Just two months later, in February of 2013, appellants filed suit in the Western District of Louisiana against the individuals who conspired with members of the Board and his business competitors to deprive him of his license, including the Ogden Appellees, Barry Ogden, the Executive Director of the Board of Dentistry, Camp Morrison, the Board's lead investigator, and Dana Glorioso and Karen Moorhead, dental assistants employed by Dr. Haygood's competitors who acted as unlicensed investigators to manufacture false evidence against him in furtherance of the Board's malicious prosecution of Dr. Haygood designed to remove him as competition in the Shreveport dental market. In 2011, in the state court suit, the Ogden Appellees had successfully argued that Dr. Haygood's claims against them should be dismissed as premature because the administrative proceedings were pending appeal in the Fourth Circuit. In May 2013, Haygood's appeal of the Ogden Appellees' dismissal from the state court suit was still pending before the Louisiana Second Circuit when, in response to the federal court complaint, appellees moved for a dismissal under Rule 12b-6, arguing, one, that appellants' claims had accrued when the state court case was filed in September 2011 and were timebarred, and two, the complaint failed to allege sufficient facts to state a plausible conspiracy or left a claim against them. Nearly a year later, and apparently after converting the Rule 12b-6 motion into a motion for summary judgment without notice to the parties, the district court granted appellees' motion and dismissed appellants' claims with prejudice and without leave to amend. That was in March of 2014, over 10 years ago. Other than the Rule 12b-6 motion, the only significant motion filed by the Ogden Appellees was their motion for attorney's fees in 2018. The motion did not provide any evidence of frivolity or bad faith or intent to harass, which was their burden to prove by the preponderance of the evidence, nor could appellees point to anything in the record which would support such a finding. Yet, without any reference to the frivolity factors and based on no more than the post-hoc reasoning that the Supreme Court warned against in Christiansburg, the district court awarded the Ogden Appellees prevailing defendant's attorney's fees, finding that, because the appellants' civil rights claims were timebarred, they were necessarily sufficiently frivolous to merit the award, and that, because the appellants were not dentists, the Lukda claim was necessarily groundless and brought in bad faith. Judge Hicks' ruling was an abuse of discretion, replete with clear factual and legal errors, and must be reversed. The district court's ruling was the kind of hindsight logic that, in the words of the Supreme Court, discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. The decisive issue before this court is whether the district court abused its discretion when it held the appellants' claims were sufficiently frivolous to justify an award of prevailing defendant's attorney's fees in a civil rights claim. In this context, frivolous means more than flimsy or untenable. It means a claim with no legal or factual foundation whatsoever. Here, though they were ultimately not successful, appellants' claims under Section 1983 and Lukda were well-founded, supported by evidence, and not clearly foreclosed by any controlling precedents, and therefore not sufficiently frivolous to justify an award of defendant attorney's fees under those statutes. Under Section 1988— So that I understand, the district court found that both the federal claim as well as the state unfair trade practices claim were untimely. Is that correct? No, Your Honor. The state court—the Judge Hicks determined that the 1983 claim was untimely, and that—so it was time-barred, and he found that the Lukda claim failed to state a claim— Because they were not competitors. Because they were not dentists, yes. He also—did he not also find that that claim should have been brought earlier as well, or— That's not— Just on the lack of them being competitors? Yes, Your Honor. Like a no cause of action. Exactly, yes. Counsel, in response to the motion to dismiss below, did Dr. Haygood ever argue that the common law tort applicable to his 1983 claim was malicious prosecution and witness tampering, and that the claim did not accrue until the underlying court proceedings terminated in his favor? Yes, Your Honor, that was their argument. The district court judge found that because he had knowledge of the underlying—the district court judge found that the underlying tort was actually And so that had a one-year prescriptive period, and it accrued when he became aware of the conspiracy, which he then found was back in 2011 or 2010 when his dental license was revoked by the court. So you're saying Dr. Haygood did identify malicious prosecution as the analogous common law tort? In fabrication of evidence, yes. Below, at the trial court level. Yeah, but my understanding—so we attempted to appeal the Rule 12b-6 motions, the granting of that. Unfortunately, there was a jurisdictional issue because the notice of appeal was filed about 13 hours too late, and so this court has ruled that we're no longer able to appeal on that issue. The issue, however, we can appeal is the finding of frivolity in the award of attorney's fees because the determination of the—which is the analogous common law tort when a 1983 cause of action accrues is very complicated, and it's not a well-settled thing. So let me just—I can explain that better. So back when the motion for attorney's fees had been ruled upon, and then shortly thereafter, Dr. Haygood filed a motion for reconsideration. At that time, the United States Supreme Court was actually grappling with the complicated issue of prescription and accrual of 1983 claims in McDonough v. Smith. So in June of 2019, the Supreme Court actually issued an opinion in McDonough holding that the statute of limitations for a 1983 action alleging fabrication of evidence began to run when the claim—the claimant was acquitted. So here this would have been—certainly the earliest that would be would have been in December of 2012 when the Louisiana Supreme Court denied it. Since the federal court suit was filed two months after that, it certainly isn't within the one-year prescriptive period for a tort. Let me ask it this way. Are you raising an argument on appeal that was not raised before the district court? Certainly not, Your Honor. And this has been a consistent argument throughout. The issue—last time this was up here, there was much discussion of the McDonough case and on the motion for attorney's fees, but then again, the court found they did not have jurisdiction on that as well because the amount of attorney's fees had not yet been set, so it was sent back and now we have returned. So no, we are not raising a new issue on appeal, although this case was—you know, the Supreme Court case was decided after the—where the opinion came down afterwards, after the motion for reconsideration was already submitted on briefs. But no, this is not for the first time on appeal. Dr. Haggard has consistently maintained that the prescriptive issue was improperly determined by the lower court. I understand that's your general argument, but was it made on—was the argument made on this specific basis that you're arguing now, the analogous common law tort? I believe so, Your Honor, and also the conspiracy. The conspiracy to deprive Dr. Haggard of his due process rights and dental license was also—that was another—that was raised. The conspiracy was ongoing, so another thing that was argued as well was the fact that it was a continuing tort. When this was happening, the dental board was still pursuing Dr. Haggard based on the fabricated evidence that had been created by the Ogden Appellees Moorhead and Glorioso at the instruction of Ogden Appellee Camp Morrison at the instruction of Ogden Appellee, Mr. Ogden. So I think the question, though, that is key for this court to decide is whether or not Haggard's claims were so frivolous as to merit award of prevailing defendant's attorney's fees. If not, then there cannot be bad faith, which again was also not in any or properly determined by the district court. Bad faith requires some sort of evidence of malice or intent that was not present in the record of this case. This case was dismissed at the initial pleading stage. The district court found that there was no plausible way that there could be a lupta claim and that the 1983 claim was so clearly time barred to merit an award of a and strongly disfavored. In addition to that, to those two factors, the award calculation itself was of an abusive discretion. Even the most cursory review of the time report submitted by the Ogden Appellees reveals dozens of entries entirely unrelated to the appellee's defense of the civil rights and lupta claims. The district court did not seem to make any effort to parse out the time that was spent solely on matters in the state court case or work done on behalf of other defendants or the intervention of the defendant's insurers, which happened after the motion to dismiss was granted in 2014. You're right about those. What percentage of the total do those amount to? I'm just asking for an estimate. Well, your honor, roughly about 60 percent, I would say, based on my review and calculations. So in the first year between the initiation of the suit and the March 2014 dismissal, all total fees for the Ogden Appellees, and that's including unavailable fees, is $43,293. The end award was $110,000, more than that. So after that point, there's about, you know, $70,000 in fees that were awarded. And the only significant motion that they filed in that time was the motion for attorney's fees. If you look at the entries from before that, there's a lot, a large portion of them, and you can see them at Record on Appeal 3832 to 3857. There's a lot that would say multiple defendants on behalf of multiple defendants. A lot of communications regarding the state court suit or discovery disputes, which again, there was no discovery in this matter. This matter was dismissed on a Rule 12b6 motion, where again, the, you know, the facts are, the factual allegations are supposed to be read in the light most favorable to Dr. Haygood, which they weren't. So in, you know, in summary, your honor, the record of this case reflects that the appellant's lawsuit was arguably meritorious, warranted careful consideration, and was brought against the Ogden appellees in good faith. And had the district court considered the requisite factors and applied the strict standards required to award a prevailing defendant attorney's fees under Section 1988 and LUCTA, it would have found that Dr. Haygood's civil rights claims were not so frivolous as to justify an award to a prevailing defendant, and that Haygood's LUCTAs and conspiracy claims do not fall to the level of groundlessness necessary for an award of an attorney's fee under LUCTA, nor were they brought in bad faith or with the intent to harass. Unfortunately, the district court failed to properly apply the law in this case, abused its discretion, and committed clear error when it granted appellees motion for attorney's fees and awarded over $110,000 in attorney's fees to the defendants, much of which bore no relation to their defense of the civil rights or LUCTA claims. So accordingly, your honors, appellants respectfully request that this honorable court reverse the district court's grant of attorney's fees to the Ogden appellees, and I will reserve the balance of my time. JUSTICE SCALIA. Yes, you've saved time for about Ms. Ainsworth. MS. AINSWORTH. Thank you, Your Honor. JUSTICE SCALIA. Ms. Elton. MS. ELTON. May it please the Court. Your Honors, I do want to address a jurisdictional issue, but very quickly, Judge Ramirez, this argument was not made. This argument, when we filed our motion to dismiss based on the prescription argument as to the 1983 claim, there was no, in their opposition, what they argued was that the filing of the state court suit had told the prescriptive period. There was no argument at that point that this was malicious prosecution and therefore the proper accrual period. It was not until after the court had already ruled on the motions to dismiss that that effort to try and reshape what the accrual period was, was that argument made. So I wanted to address that before I got far into this. Your Honors, I want to address a jurisdictional issue that, as I prepared for this, came to my attention. There were two separate judgments from this court, from Judge Hicks, the, related to the attorney's fees. The first one was granting our motion. It made no award. It gave no sum certain. So the first order granted our motion for attorney's fees, and that's the order wherein the court found that it was frivolous, bad faith, those specific determinations. The appellants actually attempted to appeal that. It came here to the U.S. Fifth Circuit, and because there was a, there was no sum certain figure, this court lacked jurisdiction based on its jurisprudence and sent it back and said, there's no sum certain. And so we have no appellate jurisdiction to look at the judgment where the, where the district court found that the appellees were entitled to attorney's fees. The second order, so that goes back down after this court says, we don't have appellate jurisdiction, no sum certain. There's a second judgment that awards the $110,000 in fees and cost. If you look at the notice of appeal, Your Honor, in the record at 4398, the first judgment was not appealed. All that was included in the notice of appeal was the judgment with the award and the motion for consideration that was filed in response to the judgment with the monetary award. So our original judgment where the court found bad faith, the frivolity, the fact that the court thought that we were entitled to attorney's fees under 1988 and under unfair trade practice, was not appealed. So we would argue that's a jurisdictional issue and all that's before this court properly is whether or not the attorney's fees were reasonable under the circumstances and whether or not the second thing being, the second order being whether the district court erred in finding that rules 45, 49, I'm sorry, 54, 59, and 60 provided no legal basis to reverse or amend the monetary award. So we would argue, Your Honor, that's all that's before this court and that's a jurisdictional issue. We wanted to raise that where the district court found the bad faith occurred and the things they have attacked with regard to that judge's rulings and his findings that supported why we were entitled to attorney's fees is not on appeal. So we think this is limited to whether or not it was reasonable, the amount was reasonable, and whether or not the court erred in finding that there was no basis to reconsider his award, the monetary award. But with that being said, I'm going to go ahead and address, obviously, the substance of their brief because, again, just to kind of conclude that thought, there is no assignment of error in their brief related to what I think we argue is on appeal. There is no assignment of error talking about . . . You've said that three times now. I'm sorry, Your Honor. I'm sorry, Your Honor. So I will move on to the 1988 claim and whether or not that was frivolous. Your Honor, the issue is not that the district court just simply said it's prescribed and therefore it's frivolous. What the district court found in addition to that, and that's where we argue that this wasn't just a it was dismissed, therefore it's frivolous. Of course, there is placeholding cited saying that a dismissal for time barred is frivolous. But in addition to that, the district court took special note that this exact lawsuit with these exact claims and these exact alleged injuries was filed in state court in September of 2011. And there was no 1983 claim asserted. There was, however, a Louisiana Constitution due process violation asserted. So, Your Honor, we would argue that not only was it time barred because of the discovery rule, and I'll talk about that, but because they had filed an identical lawsuit. One thing that's not addressed in the appellant's brief is this court's well-settled rules regarding the discovery rule, even in 1983 claims. Just a minute ago, you told us three times that the only thing that we have jurisdiction over is the amount of the award, but now you're arguing other things. Address yourself to the propriety of the amount, the dollar. Yes, Your Honor. Your Honor, at the time that we had filed, one of the issues, let me start with a part about the criticism about the court's review of the records. The court in multiple times talked about its close scrutiny of our bills and the legal bills that were submitted. The court expressly made those findings. It talked about doing a thorough review. It actually did not award exactly the amount that was requested, which would further indicate that, in fact, he did review those bills, and he considered those when he made the award. With respect to the reasonableness, other than the broad representations about matters being in there related to the state court proceeding, neither at the district court or, Your Honors, in this court have they pointed to a single billing entry specifically. We've had those bills submitted for years now, and other than just making broad statements that they thought entries were related to discovery at the state court level, there has never been any effort by appellants to say, these are the entries that we think should not have been included in the court's calculation. A review of the docket references how much of the motion practice that had occurred. When we talk about the figure or the number, Your Honor, I'd reference the court to, just for relativity purposes, there were multiple attorney awards that were granted by Your Honor, as your courts know, and one of those was 90-something thousand. One of those was 60-something thousand, and I only give that to the court for reference to talk about in the docket showing how much work was done by these lawyers in relations to these claims. With respect to the argument of appellant that, I mean, sorry, appellant, that the court should have severed the claims related to Louisiana unfair trade practice in 1983, the court specifically noted, and we cited jurisprudence, these claims were so intertwined, there was no way for the court, Your Honors, to try and unwind what part of a lawyer's time was spent dealing with unfair trade practice versus the 1983 claim versus the defamation claim. It was a 57-page petition, and then at the end it just said, here, I've alleged all my facts, and I think that I have these following counts. When we address the 12B6 motion, I mean, that addressed all of those claims. Let's focus on the approximately $11,000 that was awarded for time from the Louisiana Attorney General's office. There was a dispute, as I understand it, as to whether the Lodestar method was employed at all or whether it was properly employed because the Attorney General's office had changed its manner of tracking time so that there was no, there was not the usual documentary support under the Lodestar method. Address that, please. Yes, Your Honor. We submitted the, we received the bills from the AG's office, Your Honor, and we submitted those, and it was our understanding, and we included that in our detailed time report, that there were some software issues or problems that the AG's office had wherein they were unable to provide the specific type bills, for example, that we provided that had that specificity, Your Honor, and so we addressed that in the, when we submitted our detailed time report was that they did not have that additional information the AG's office to provide to support the $11,000 other than the hours that had been spent and logged. But that information would be required, would it not, for us to uphold that part? I'm only talking about the $11,000. Your Honor, I can't disagree. It would have certainly been helpful. I will tell you that the one thing I do want to advise the Court is we maintained these files separately for billing purposes, Your Honor. You had the state court petition and you had a federal complaint, and we maintained those files and billed those files separately, which certainly assisted in the ability at the point where we got to the federal court to ask for attorney's fees, those were all billed separate than the state court case. So that gave ease for us to let the courts know what we had logged as in relation to the federal case. I will say this, Your Honor, with respect to the discovery. She is, my esteemed counsel is correct. There was no discovery. Of course, we were at the 12 v. 6 stage. There was discovery, extensive discovery in the state court. I would respectfully disagree that none of that would have had implications or considerations by the attorneys involved to consider when we looked at the federal lawsuit, which was the identical claims. So while there may have been some bleed over and some billing entries that discussed state court discovery, it certainly would have had implications on the federal case because it was the exact same litigation. But, Your Honor, yes, I certainly understand Judge Smith. My understanding is they didn't have the ability to give those specifics, but that the files were maintained separately. With respect to the court's opinion, with respect to the reasonableness, Your Honor, the court made clear that it used the lodestar method. The court expressly considered, quote, the interwoven nature of the many claims and proceedings in this case, all of which involved a common core of facts and were based on related legal theories. The court made it clear that they could not be separated, that they were all part of the operative facts, and that the appellees can recover to defend all of those interrelated twines that the court found that it could not segregate and try and unwind. The district court expressly found defendants have exercised sound billing judgment in seeking this award of attorney's fees by excluding entries related to plaintiff's case pending in state court and writing off otherwise unnecessary entries before submitting time records to the court. Next, the district court specifically found the court conducted a thorough review of the detailed time report submitted by defendants. The district court expressly found the hours invoiced as represented in the detailed time report are reasonable for purposes of the lodestar calculation, and the court found the hourly rates are reasonable for the purposes of the lodestar calculation. The court considered Johnson and whether any of those factors should move this figure up or down and found that none of the Johnson factors warranted that. And I don't believe even appellants respectfully have argued that the Johnson factors should do anything with respect to the figure. So, Your Honor, I go through what's expressly in that ruling from the judge as I'm not sure what else Judge Hicks could have done to exhibit that he had gone through these bills and that he had made a determination based on the bills before him. Appellant's argument is he didn't scrutinize it enough. He didn't really go through it and look at it enough. He shouldn't have included certain things. His expressed opinion says otherwise. Your Honor, that is my argument with respect to the reasonableness of the award. Again, Judge Smith, I was only going to address the merits in case this court disagreed with me that they had properly appealed it. And that was going to be the reason to address the merits of it in case I did not find a situation where that original order could have been bootstrapped, Judge Smith, to the monetary award. But I certainly didn't want to not address any of the merits of the case with respect to the 1983 being prescribed in the loop to claim regarding whether or not they are dentists. But if the court is inclined to just want to hear on the reasonable side of it, again, I . . . I'm not indicating how we're going to rule on any issue, and you're free to . . . Yes, Your Honor. . . . free to argue anything that's been properly raised. Thank you, Your Honor. You can only argue once. Yes, Your Honor. So I've already argued on the 1983. I will very briefly cover the Louisiana unfair trade practice section. Your Honor, what the district court found and what we have argued in response to this appeal is that even if you take everything in their petition as true, even if every . . . as it would be on a 12b6 motion, there was no viable claim that could have been stated against these appellees. And as Your Honor, Judging Hart noted, the whole . . . they're not a competitor in who they are. The loop to claim clearly requires that the individual, the defendant, had to have a competitive motive, as this court has found, and that is an important critical factor of whether or not a loop to claim stands. What plaintiffs . . . appellants have attempted to argue is that this is a standing issue. Could Dr. Haygood bring suit against these individuals based on the Sheramine decision, finding that it's not limited to competitors? Certainly agree, that's what Sheramine finds, which is you don't have to be a competitor of the plaintiff for the plaintiff to have suit. That doesn't change the analysis as to an unfair trade practice claim. An unfair trade practice claim is only going to stand if the defendant, in the course of a trade or commerce, commits an unfair or deceptive act for the purposes of a competitive motive, and that harms the plaintiff, whether the plaintiff was a competitor or not. So our argument has been based exclusively on the appellant's complaint. The complaint itself said these individuals did all this, their motive was to get me out of the dental market in Shreveport. So he . . . Your Honor, appellants framed their loop to claim in that the individuals that were named as defendants had to be competitors of Dr. Haygood. There was no scenario under which they could be competitors of Dr. Haygood, because they were not in the dental market, they had no interest in that market, and therefore could have no competitive advantage and competitive motive that they would have had with respect to the cause of actions that were pled by the defendant. So that's on the . . . I've addressed the 1983 and the loop to claim, as well as the jurisdictional issue. If Your Honors have no question, I will conclude. All right. Thank you, Ms. Melton. Thank you, Your Honor. Ms. Ruth for rebuttal. Thank you, Your Honor. So just in response to the issue of whether the analogous tort had previously raised, the issue had been raised in response to the Vivaldi determination and the motion for attorney's fees, because that was when the Supreme Court case came out. But again, this case was dismissed in the early pleading stages. You don't have to plead specific claims or facts, you just have to plead enough that it puts them on notice. If there's the wrong fact, you know, or the wrong claim alleged, you can still infer a claim from the well-pleaded facts. The complaint is very detailed. If you look at it, it's got multiple sites to actual established evidence from the state court case, depositions, and the like. In regards to the jurisdictional issue raised, that was just raised for the first time today. But again, the determination of Vivaldi and bad faith for the LEPTA claim is discussed within the ruling setting the amount of the attorney's fees, and you can see that at Record on Appeal 4009. And also, in regards to whether or not we've raised a dispute as to the specific entries, appellants weren't able to do that because it was never set for briefing after this court came down and said, we do not have jurisdiction to rule on the award of attorney's fees because no certain amount has been set, so it wasn't a final judgment. Then the court set the amount in the subsequent ruling, which again, you can see in that they discuss the issues of frivolity and bad faith. So, Your Honor, you know, with the time I have left, I just want to make sure that this court understands that the claims that Dr. Haygood brought were not frivolous. Because they were not frivolous, it's improper to award attorney's fees under both 1983 and LEPTA. It's a penal award against a civil rights plaintiff. It's presumptively disfavored. The factors that this court has laid out for considering whether a claim is frivolous, none of them apply to show that Dr. Haygood's frivolous. Dr. Haygood's due process rights were violated. LEPTA does not require a direct competitor in order to prevail. Anyone who has been harmed by somebody with a motive, you know, in trade or commerce and what have you, anyone can bring a claim. Anyone can bring a claim. You don't have to be a dentist to be sued by a dentist under LEPTA. You're not statutorily immune. The Sheremy decision by the Louisiana Supreme Court held as much, and the district court misapplied that law and created a clear air of law and abused its discretion in doing so. The Supreme Court, this court, all have overturned attorney's fees awards in situations such as this or actually some mostly worse. Dr. Haygood's claims had arguable merit. They were backed by evidence. To award a civil rights defendant attorney's fees for winning a Rule 12b6 motion, $100,000, it's unjust. It was an abuse of discretion for the district court to do that. So, Your Honors, if I may, do you have any questions? No? Thank you, Ms. Haygood. All right, thank you, Your Honors. We respectfully request that this court reverse the district court's ruling. Thank you. That's all right. Your case and all of today's cases are under submission and the court is in recess until 9 o'clock tomorrow.